## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARCIA CRANE AND BRITTNEY LINDSEY, Individually and for Others Similarly Situated

v.

MCLAREN FLINT and MCLAREN HEALTH CARE CORPORATION

**Case No.**

Jury Trial Demanded

FLSA Collective Action
Pursuant to 29 U.S.C. § 216(b)

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Marcia Crane ("Crane") and Brittney Lindsey ("Lindsey") (together "Plaintiffs") bring this collective action to recover unpaid overtime and other damages from McLaren Flint ("Flint") and McLaren Health Care Corporation ("McLaren") (together "Defendants").

2.     McLaren and Flint jointly employed Crane as a Lab Assistant at McLaren's Flint facility.

3.     McLaren and Flint jointly employed Lindsey as a Nursing Assistant and Housekeeper at McLaren's Flint facility.

4.     Like the Putative Class Members (as defined below), Plaintiffs regularly worked more than 40 hours in a week.

5.     But Defendants did not pay for all the hours they worked.

6.      Instead, Defendants automatically deducted 30 minutes a day from these employees' work time for so-called meal breaks.

7.      Plaintiffs and the Putative Class Members were thus not paid for that time.

8.      But Defendants fail to provide Plaintiffs and the Putative Class Members with *bona fide* meal breaks.

9.      And Plaintiffs and the Putative Class Members did not actually receive *bona fide* meal breaks.

10.      Instead, Defendants require Plaintiffs and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts and continuously subject them to interruptions during their unpaid "meal breaks."

11.      Defendants' auto-deduction policy violates the Fair Labor Standards Act (FLSA) by depriving Plaintiffs and the Putative Class Members of overtime pay for all overtime hours worked.

## JURISDICTION & VENUE

12.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.      This Court has general personal jurisdiction over Flint because is a domestic corporation headquartered in Flint, Michigan.

14.      This Court has general personal jurisdiction over McLaren because McLaren is a domestic corporation headquartered in Grand Blanc, Michigan.

15.     Venue is proper because Defendants both reside in Michigan, and McLaren maintains its headquarters in Grand Blanc, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

16.     Crane worked for Defendants as a Lab Assistant at McLaren's Flint facility from approximately March 2013 until March 2021.

17.     Lindsey worked for Defendants as a Nursing Assistant and Housekeeper at McLaren's Flint facility from approximately August 2019 until May 2022.

18.     Throughout their employment, Defendants jointly classified Plaintiffs as non-exempt and paid them on an hourly basis.

19.     Throughout their employment, Defendants subjected Plaintiffs to its common practice of automatically deducting 30 minutes a day from their recorded work time for so-called "meal breaks."

20.     But throughout her employment, Defendants failed to provide Plaintiffs with *bona fide* meal breaks.

21.     And throughout their employment, Plaintiffs did not actually receive *bona fide* meal breaks.

22.     Crane's written consent for McLaren is attached as **Exhibit 1**.

23.     Crane's written consent for Flint is attached as **Exhibit 2.**

24.     Lindsey's written consent for McLaren is attached as **Exhibit 3**.

25.     Lindsey's written consent for Flint is attached as **Exhibit 4.**

26. Crane initially opted into *Hart v. McLaren Health Care Corp.*, No. 4:23-cv-10608-LVP-DRG in the Eastern District of Michigan on March 23, 2023 (Doc. 6) and her statute of limitations should run from the date she opted into the *Hart* matter.

27. Lindsey opted into *Hart v. McLaren Health Care Corp.*, No. 4:23-cv-10608-LVP-DRG in the Eastern District of Michigan on March 16, 20323 (Doc. 4) and her statute of limitations should run from the date she opted into the *Hart* matter.

28. On June 12, 2023, Hart filed an Amended Complaint, limiting the action and putative collective to employees who worked for McLaren at the McComb facility. (Doc. 16).

29. As Crane worked at McLaren's Flint facility, Crane opted out from the *Hart* matter on June 29, 2023 (Doc. 18) and subsequently filed the current action.

30. Likewise, because Lindsey worked at McLaren's Flint facility, Lindsey opted out on June 29, 2023 (Doc. 18) and subsequently filed the current action.

31. Plaintiffs bring this action on behalf of themselves and other similarly situated hourly, non-exempt employees who worked for Defendants at the Flint facility and were subject to Defendants' automatic meal break deduction policy.

32. Defendants automatically deduct 30 minutes per shift from all these employees' recorded work time for so-called "meal breaks."

33. But Defendants uniformly require all these employees to remain on-duty and perform compensable work throughout their shifts, including their unpaid "meal

breaks." Thus, Defendants uniformly deprive these employees of overtime pay for all overtime hours worked in violation of the FLSA.

34.     The Putative Collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees, who worked for, or on behalf of, McLaren and Flint at the Flint facility, who received an automatic meal period deduction at any time during the past 3 years ("Putative Class Members" or "Putative Collective").**

35.     McLaren is a Michigan not-for-profit corporation that maintains its headquarters in Grand Blanc, Michigan.

36.     McLaren may be served with process by serving its registered agent: **Philip A. Incarnati, One McLaren Parkway, Grand Blanc, Michigan 48439**, or wherever he may be found.

37.     Flint is a Michigan not-for-profit corporation that maintains its headquarters in Flint, Michigan.

38.     Flint may be served with process by serving its registered agent: **Chris Candela, 401 South Ballenger Highway, Flint, Michigan 48532**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

39.     At all relevant times, McLaren was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40.     At all relevant times, Flint was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

41.     At all relevant times, McLaren, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

42.     At all relevant times, Flint, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

43.     At all relevant times, McLaren was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because McLaren, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

44.     At all relevant times, Flint was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Flint, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

45.     At all relevant times, McLaren has had an annual gross volume of sales made or business done of not less than $500,000 each year.

46.     At all relevant times, Flint has had an annual gross volume of sales made or business done of not less than $500,000 each year.

47.     At all relevant times, Defendants jointly employed Plaintiffs and the Putative Class Members as "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

48.     At all relevant times, Plaintiffs and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

49.     Defendants uniformly deducted 30 minutes/shift from Plaintiffs' and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

50.     As a result, Defendants failed to pay Plaintiffs and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

51.     Defendants' automatic meal break deduction policy, which deprives Plaintiffs and the Putative Class Members of overtime compensation for the weeks in which these employees work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

<h3 style="text-align:center">FACTUAL ALLEGATIONS</h3>

52.     McLaren bills itself as a "full integrated health care delivery system … [with] hospitals in Michigan and Ohio[.]"[1]

---

[1] https://www.mclaren.org/ (last visited June 22, 2023).

53.     Specifically, McLaren boasts that its "fully integrated health care network" includes 15 hospitals and 350+ ambulatory sites. Exhibit 5 (McLaren's 2021 Annual Report) at 11.

54.     Indeed, McLaren provides service all across Michigan, which are all a part of its McLaren network:



2

---

² https://www.mclaren.org/main/about-mclaren-health-care (last accessed June 22, 2023).

55.     Flint is part of McLaren's health care delivery system and offers "a full range of comprehensive and advanced services."

56.     McLaren and Flint have common ownership and/or management.

57.     For example, David Mazurkiewicz is Flint's Treasurer and a member of its Board of Directors and Trustees, *but* Mr. Mazurkiewicz is also the Executive Vice President, Chief Financial Officer, and the Treasurer for McLaren. *See* Exhibit 6 (LARA Flint); Exhibit 7 (McLaren 2022 Annual Report) at 30-31 and 33; Exhibit 8 (LARA McLaren).

58.     Further, Mr. Mazurkiewicz is a member of multiple McLaren Boards including McLaren's Health Plan Board of Directors, McLaren Health Plan Community Board of Directors, MDwise Board of Directors, McLaren Integrated HMO Group Board of Directors, McLaren Health Management Group Board of Directors, McLaren Medical group Board of Directors, McLaren Physician Partners Board of Directors, and McLaren High Performance Network Board of Managers. *See* Ex. 7 at 30-33

59.     Likewise, McLaren and Flint have shared and/or centralized human resources functions.

60.     For example, McLaren has centralized control of hiring at all McLaren facilities, including the Flint facility. *See* Ex. 7 at 3.

61.     In fact, "[w]hen speaking with candidates, [McLaren] recruiters highlight that with one application and one phone screen they can be considered for any open position that they qualify for within the McLaren network." Ex. 7 at 11.

62.     Thus, to work at any McLaren facility, including the Flint facility, Plaintiffs and the Putative Class Members must apply though McLaren.[3]

63.     McLaren and Flint also have shared business operations.

64.     For example, McLaren utilizes a system-wide appointment scheduling and billing system regardless of whether someone is making an appointment or paying a bill at Flint or another McLaren facility. *See* Ex. 7 at 3.

65.     Likewise, McLaren has centralized its staffing operations and digitalized the McLaren data systems for staff across its healthcare network, including employees working at the Flint facility like Plaintiffs and the Putative Class Members. *See* Ex. 7 at 3.

66.     The McLaren One digital platform allows "instant access to health and billing records across all subsidiaries." Ex. 7 at 3.

67.     McLaren's Operations Statistics show data across the entire McLaren universe., and it does not limit its standardization based on facility. [4]

---

[3] https://careers.mclaren.org/ (last accessed June 22, 2023).
[4] https://www.mclaren.org/main/about-mclaren-health-care (last accessed June 22, 2023).

68.   In fact, McLaren's "expanded data networking ensures the most distant rural facility has access to the same information and resources as our biggest urban centers." Ex. 5 at 8.

69.   To complete their shared business objectives, McLaren and Flint jointly employ patient care workers, including Plaintiffs and the Putative Class Members, to provide patient care services and treat the patients in McLaren's Flint facility.

70.   McLaren hires and treats these workers (including Plaintiffs and the Putative Class Members) just like regular employees.

71.   McLaren, jointly with Flint, controls all meaningful aspects of these patient care workers' employment.

72.   McLaren and Flint jointly control Plaintiffs' and the Putative Class Members' rates and methods of pay.

73.   McLaren and Flint jointly control Plaintiffs' and the Putative Class Members' schedules and assignments.

74.   McLaren and Flint jointly control Plaintiffs' and the Putative Class Members' patient care work.

75.   McLaren and Flint jointly require Plaintiffs and the Putative Class Members to follow McLaren's and Flint's policies, procedures, and protocols.

76.   Plaintiffs' and the Putative Class Members' patient care work must strictly adhere to the uniform quality standards put in place by McLaren and Flint.

77.    In fact, McLaren boasts its "entire health system speaks the same language" when it comes to expectations for it care. Ex. 5 at 18.

78.    Indeed, upon hiring, McLaren and Flint jointly require all the patient care employees who work in the Flint facility, including Plaintiffs and the Putative Class Members, to complete trainings on McLaren's uniform policies, procedures, and protocols to ensure their work conforms to the same.

79.    Plaintiffs and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

80.    Virtually every job function is predetermined by McLaren and Flint, including the tools and equipment used, the schedule of work, and related work duties.

81.    McLaren and Flint prohibit Plaintiffs and the Putative Class Members from varying their job duties outside of the predetermined parameters and require Plaintiffs and the Putative Class Members to follow McLaren's and Flint's policies, procedures, and directives.[5]

---

[5]    *See* https://careers.mclaren.org/jobs/laboratory-technical-assistant-phlebotomist-9731 (Defendants' Job Posting at Flint stating employees work according to established guidelines and ensure McLaren's standards are met in their day-to-day duties) (last accessed June 22, 2023).

82.     McLaren and Flint jointly prohibit Plaintiffs and Putative Class Members from straying from McLaren's and Flint's procedures, plans, protocols, and specifications.

83.     McLaren enforces the same employee expectations for all its workers, regardless of what McLaren facility they are assigned.[6]

84.     Without the patient care work Plaintiffs and the Putative Class Members perform, McLaren and Flint would not be able to complete their common business objective of providing healthcare services to patients in McLaren's Flint facility.

85.     Thus, Plaintiffs' and the Putative Class Members' work is integral to, and simultaneously benefits, McLaren's and Flint's shared business objectives.

86.     Plaintiffs and the Putative Class Members rely on McLaren and Flint for work and compensation.

87.     Plaintiffs and the Putative Class Members do not substantially invest in the tools required to complete the overall job to which they are assigned.

88.     Rather, McLaren and Flint incur large-scale business and operating expenses like marketing, payroll, equipment, tools, healthcare facilities, and materials.

---

[6] https://www.mclaren.org/main/what-we-expect-from-our-employees (last accessed June 22, 2023).

89.    At all relevant times, McLaren and Flint jointly maintained control, oversight, and direction of Plaintiffs and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

90.    At all relevant times, McLaren and Flint jointly possessed the authority to hire, fire, and discipline Plaintiffs and the Putative Class Members.

91.    At all relevant times, McLaren and Flint jointly supervised and controlled Plaintiffs' and the Putative Class Members' schedules, rate and method of pay, work, and other conditions of their employment.

92.    At all relevant times, McLaren and Flint jointly maintained employment records for Plaintiffs and the Putative Class Members.

93.    In sum, at all relevant times, McLaren and Flint jointly employed Plaintiffs and the Putative Class Members.

94.    McLaren and Flint jointly classify these patient care employees working at McLaren's Flint facility, including Plaintiffs and the Putative Class Members, as non-exempt from overtime and uniformly pay them on an hourly basis.

95.    For example, McLaren and Flint jointly employed Crane as a Lab Assistant at McLaren's Flint facility from approximately March 2013 until March 2021.

96.    As a Lab Assistant, Crane's primary responsibilities included providing patient care, drawing blood, assisting doctors with bone marrow draws, creating slides

to be analyzed, prepare tissue and specimens for the lab, and assist medical technologists as needed.

97.    Likewise, McLaren and Flint jointly employed Lindsey as a Nursing Assistant at McLaren's Flint facility from approximately August 2019 until May 2022.

98.    As a Nursing Assistant Lindsey's primary responsibilities included assisting the nurses with daily routines such as vitals, passing out waters to patients, delivering food trays, making beds, emptying trash and linen, changing patients, and helping with hygiene.

99.    Throughout their employment, Defendants jointly subjected Plaintiffs to Defendants' common practice of automatically deducting 30 minutes from their recorded hours worked and wages each shift for meal breaks, regardless of whether they actually received a *bona fide* meal break.

100.    But throughout their employment, Plaintiffs did not actually receive *bona fide* meal breaks.

101.    Plaintiffs and the Putative Class Members performed their jobs under Defendants' joint supervision, and using materials, equipment, and technology approved and supplied by McLaren.

102.    Defendants jointly require Plaintiffs and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

103. At the end of each pay period, Plaintiffs and the Putative Class Members received wages from Flint that were determined by common systems and methods that McLaren and Flint jointly selected and controlled.

104. Defendants jointly require their hourly, non-exempt patient care employees, including Plaintiffs and the Putative Class Members, to record their hours worked using Defendants' timeclock system (Kronos).

105. Further, Defendants subject their hourly, non-exempt patient care employees working at the Flint facility, including Plaintiffs and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

106. Specifically, Defendants automatically deduct 30 minutes from Plaintiffs' and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually received a full, uninterrupted, 30-minute meal period.

107. But Defendants fail to provide Plaintiffs and the Putative Class Members with *bona fide* meal periods.

108. And Plaintiffs and the Putative Class Members do not actually receive *bona fide* meal breaks.

109. Instead, Defendants require Plaintiffs and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and

Defendants continuously subjecting them to work interruptions during their unpaid meal periods.

110.   Indeed, because of these constant work interruptions, Plaintiffs and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

111.   Rather, during their unpaid "meal breaks," Plaintiffs and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

112.   Thus, Plaintiffs and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Defendants' – not these employees' – shared predominant benefit.

113.   This unpaid time is compensable under the FLSA because Defendants knew, or should have known, that (1) Plaintiffs and the Putative Class Members were performing unpaid compensable work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, (4) the meal period was less than 30 consecutive minutes, (5) they were not free to engage in personal activities during their meal periods because of constant interruptions, (6) they remained on Defendants' premises, and/or (7) they predominantly spent their unpaid meal

periods performing their regular patient care duties for Defendants' shared predominant benefit.

114.   Defendants jointly failed to exercise their shared duty to ensure Plaintiffs and the Putative Class Members were not performing work that Defendants did not want performed during their unpaid "meal breaks."

115.   Despite accepting the benefits, Defendants did not pay Plaintiffs and the Putative Class Members for the compensable work they performed during their "meal breaks."

116.   Defendants know Plaintiffs and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Defendants expect and require these employees to do so.

117.   But Defendants do not pay Plaintiffs and the Putative Class Members for their routine "off the clock" meal break work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

118.   Crane worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

119.   Lindsey worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

120.   Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

121. Indeed, Plaintiffs and the Putative Class Members typically work at least 8-hour shifts for at least 5 days a week.

122. And Plaintiffs and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and patient care responsibilities.

123. As a result, Plaintiffs and the Putative Class Members work in excess of 40 hours in a typical workweek.

124. When Plaintiffs and the Putative Class Members worked more than 40 hours in a workweek, Defendants did not pay them 1.5 times their regular hourly rate for all overtime hours worked due to Defendants failure to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

125. Thus, under Defendants uniform automatic meal break deduction policy, Plaintiffs and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

126. Plaintiffs reallege and incorporate all other paragraphs by reference.

127. Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and the Putative Class Members pursuant to Section 216(b) of the FLSA.

128.   The Putative Class Members were victimized by Defendants' pattern, practice, and/or policy of automatically deducting compensable work time from their wages for so-called "meal breaks" that are not *bona fide*, which is in willful violation of the FLSA.

129.   Other Putative Class Members worked with Plaintiffs and indicated they were paid in the same manner, performed similar work, and were subject to Defendants' same automatic meal break deduction policy.

130.   Based on their experiences with Defendants, Plaintiffs are aware Defendants' illegal practices were imposed on the Putative Class Members.

131.   The Putative Class Members are similarly situated in all relevant respects.

132.   Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

133.   Therefore, the specific job titles or precise job locations of the various members of the Putative Collective do not prevent collective treatment.

134.   Rather, the Putative Collective is held together by Defendants' uniform automatic meal break deduction policy that systematically deprived Plaintiffs and the Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

135.   The Putative Class Members are similarly denied overtime pay when they work more than 40 hours per week.

- 20 -

136.    The overtime owed to Plaintiffs and the Putative Class Members will be calculated using the same records and using the same formula.

137.    Plaintiffs' experiences are therefore typical of the experiences of the Putative Class Members.

138.    Plaintiffs have no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

139.    Like each Putative Class Member, Plaintiffs have an interest in obtaining the unpaid overtime wages owed under federal law.

140.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

141.    Absent a collective action, many Putative Class Members will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

142.    Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

143.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

144.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

145.    Among the common questions of law and fact are:

a.    Whether McLaren and Flint jointly employed Plaintiffs and the Putative Class Members;

b.    Whether Defendants engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

c.    Whether Defendants' automatic meal break deduction policy deprived Plaintiffs and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

d.    Whether Defendants failed to pay Plaintiffs and the Putative Class Members overtime wages for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA;

e.    Whether Defendants knew, or had reason to know, Plaintiffs and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA;

- 22 -

f.    Whether Defendants decision not to pay Plaintiffs and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

g.    Whether Defendants' violations of the FLSA were willful.

146.    Plaintiffs and the Putative Class Members sustained damages arising out of Defendants' illegal and uniform employment policy.

147.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

148.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

149.    Therefore, the issue of damages does not preclude collective treatment.

150.    Defendants are jointly liable under the FLSA for failing to pay overtime to Plaintiffs and the Putative Class Members.

151.    Consistent with Defendants' illegal automatic meal break deduction policy, Plaintiffs and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

152.    As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the Putative Class Members.

153.    Defendants' illegal automatic meal break deduction policy deprived Plaintiffs and the Putative Class Members of the premium overtime wages they are owed under federal law.

154.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

155.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

156.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

157.    In fact, because McLaren has centralized its staffing operations and digitalized data systems for staff across its network, *see* Ex. 7 at 3, employee records for the Putative Class Members are readily available through McLaren's centralized data network.

### DEFENDANTS' VIOLATIONS OF THE FLSA WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD FOR THE FLSA

158.    Plaintiffs reallege and incorporate all other paragraphs by reference.

159.   Defendants knew they jointly employed the patient care employees that work at McLaren's Flint facility, including Plaintiffs and the Putative Class Members.

160.   Defendants knew Plaintiffs and the Putative Class Members were non-exempt employees entitled to overtime because Defendants uniformly classified and paid them as such.

161.   Defendants knew Plaintiffs and the Putative Class Members were paid on an hourly basis because Defendants jointly dictated and controlled the same.

162.   Defendants knew Plaintiffs and the Putative Class Members worked more than 40 hours in at least one workweek during the last 3 years because Defendants jointly required these employees to record their hours worked using Defendants' timeclock system.

163.   Defendants knew they were subject to the FLSA, including its overtime provisions.

164.   Defendants knew the FLSA required them to pay employees, including Plaintiffs and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

165.   Defendants knew the FLSA required them to pay Plaintiffs and the Putative Class Members for all hours these employees performed compensable work.

166.    Defendants knew they failed to provide Plaintiffs and the Putative Class Members with *bona fide* meal breaks.

167.    Defendants knew Plaintiffs and the Putative Class Members regularly worked during their unpaid meal breaks because Defendants expected and required them to do so.

168.    Defendants knew Plaintiffs and the Putative Class Members regularly spent their meal breaks substantially performing their normal patient care job duties for Defendants' common predominant benefit.

169.    Defendants knew that, as Plaintiffs' and the Putative Class Members' employers, they both had a duty to ensure these employees were not performing work that Defendants did not want performed during their unpaid "meal breaks."

170.    Defendants knew Plaintiffs and the Putative Class Members performed compensable work during their unpaid meal breaks.

171.    Defendants knew they automatically deducted 30 minutes per shift from Plaintiffs' and the Putative Class Members' recorded work time for "meal breaks."

172.    Defendants knew they automatically deducted 30 minutes per shift from Plaintiffs' and the Putative Class Members' recorded work time for "meal breaks" regardless of whether these employees actually received *bona fide* meal breaks.

173.    Defendants knew Plaintiffs and the Putative Class Members did not receive *bona fide* meal breaks.

174.    Defendants knew they did not pay Plaintiffs and the Putative Class Members for all hours these employees performed compensable work, including the compensable work they performed during their unpaid meal breaks.

175.    Thus, Defendants knew, or should have known, that they failed to pay Plaintiffs and the Putative Class Members overtime wages for all overtime hours worked in violation of the FLSA.

176.    Defendants' failure to pay Plaintiffs and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

177.    Indeed, McLaren and its affiliated entities have been sued previously by employees for failing to pay overtime wages for all overtime hours worked, including for automatically deducting compensable work time for meal breaks. *See, e.g., Hart v. McLaren Health Care Corp., et al.*, No. 4:23-cv-10608-LVP-DRG (E.D. Mich.).

178.    Defendants knowingly, willfully, and/or in reckless disregard carried out this illegal automatic meal break deduction policy that deprived Plaintiffs and the Putative Class Members of overtime compensation for all overtime hours worked in willful violation of the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA

179.    Plaintiffs reallege and incorporate all other paragraphs by reference.

180.  Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

181.  Defendants violated, and are violating, the FLSA by failing to pay Plaintiffs and the Putative Class Members overtime wages for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

182.  Throughout the relevant period, Defendants automatically deducted 30 minutes per shift from Plaintiffs' and the Putative Class Members' recorded work time for so-called "meal breaks."

183.  But throughout the relevant period, Plaintiffs and the Putative Class Members did not actually receive *bona fide* meal breaks.

184.  Instead, throughout the relevant period, Defendants expected and required Plaintiffs and the Putative Class Members to remain on-duty and perform compensable work during their unpaid meal breaks.

185.  Plaintiffs and the Putative Class Members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of wages owed for work that they performed and from which Defendants derived a direct and substantial benefit.

186.    Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Plaintiffs and the Putative Class Members overtime compensation for all overtime hours worked.

187.    Defendants' failure to pay Plaintiffs and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

188.    Accordingly, Plaintiffs and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### JURY DEMAND

189.    Plaintiffs demand a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of the Putative Class Members, seek the following relief:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order pursuant to Section 16(b) of the FLSA finding Defendants jointly liable for unpaid back wages due to Plaintiffs and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid compensation;

c.      Judgment awarding Plaintiffs and the Putative Class Members all unpaid overtime and other damages available under the FLSA;

d.      An Order awarding attorneys' fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Jennifer McManus*
**Jennifer L. McManus (P65976)**
Local Counsel for Plaintiff
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**Olivia R. Beale**
TX Bar No. 24122166
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046

713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
obeale@mybackwages.com

**Richard J. (Rex) Burch\***
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*\*Pro hac vice applications forthcoming*

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**